IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 07 2011

JAMES W. McCORMACK, CLERK
By: _____ Jones
                    DEP CLERK

Mike Townsend                                                    PLAINTIFF

vs.                    CA No. 5:11-CV-55 JLH

Bayer Corporation;                                               DEFENDANTS
Bayer Healthcare Pharmaceuticals, Inc.

This case assigned to District Judge Holmes
and to Magistrate Judge Ray

## COMPLAINT

COMES NOW, the Plaintiff, Mike Townsend, by and through the undersigned, and, for his causes of action against Defendants, Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc. (hereinafter "Bayer"), would state as follows:

### JURISDICTION & VENUE

1. The plaintiff brings this action against Defendants for retaliation in violation of the whistleblower protection provisions of the federal False Claims Act, 31 U.S.C. § 3730(h).

2. Jurisdiction and venue for this action are proper in this Court pursuant to section 3732(a) of the Act, which provides that "[a]ny action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Defendants transact substantial business in the Eastern District of Arkansas, and the acts complained of herein occurred primarily within the Eastern District of Arkansas.

1

## PARTIES

3.  Plaintiff Mike Townsend is a citizen and resident of Pulaski County, Arkansas. Mike Townsend is a former employee of Bayer, where he was employed as a sales representative.

4.  Defendant Bayer Corporation is a for-profit foreign corporation organized and existing under the laws of the State of Indiana. Bayer Corporation designs and manufactures pharmaceuticals and sells those pharmaceuticals, directly or through distributors, to health care providers in the State of Arkansas. Bayer Corporation's registered agent for service of process is Corporation Service Company, 300 Spring Building, Suite 900, 300 South Spring Street, Little Rock, Arkansas 72201.

5.  Defendant Bayer Healthcare Pharmaceuticals, Inc. is a for-profit foreign corporation organized and existing under the laws of the State of Delaware. Bayer Healthcare Pharmaceuticals, Inc. designs and manufactures pharmaceuticals and sells those pharmaceuticals, directly or through distributors, to health care providers in the State of Arkansas. Bayer Healthcare Pharmaceuticals Inc.'s registered agent for service of process is Corporation Service Company, 300 Spring Building, Suite 900, 300 South Spring Street, Little Rock, Arkansas 72201.

## ALLEGATIONS

6.  Until he was recently fired, Mike Townsend was employed by Bayer as a pharmaceutical sales representative. He held the position for six years. Mr. Townsend's sales area district included portions of eastern Arkansas, and one of the drugs he sold was Mirena®. He would travel the eastern half of the state visiting regularly face-to-face with physicians in their offices and clinics to promote and sell the drug. One of the doctors

Mr. Townsend visited regularly was Kelly Dean Shrum, D.O., who practiced in his clinic Arkansas Center for Women, Ltd. in Pine Bluff, Arkansas. Dr. Shrum purchased Mirena® from Bayer through Mr. Townsend and for several years was the largest single-practice purchaser of the drug in the state.

7. A small "T" shaped device, Mirena® is a form of contraceptive that is placed by a physician directly into the recipient's uterus. Mirena® contains 52 mg of the hormone levonorgestrel that is released slowly over a period of five years, preventing pregnancy. First approved by the Food and Drug Administration on December 6, 2000 under section 505(b) of the Food, Drug, and Cosmetic Act, Mirena® is now one of the leading forms of contraceptives used in the United States and around the world today and one of Bayer's best selling pharmaceuticals. Mirena® is manufactured for the Defendants by Bayer Schering Pharma and Bayer Schering Pharma OY in Finland. The companies produce both an FDA approved version for sale in the United States and a version that is not FDA approved for sale in other countries around the world.

8. Although Dr. Shrum continued his practice at Arkansas Center for Women, his orders of Mirena® stopped abruptly in January, 2008. In January 2008, Mr. Townsend made a call on Dr. Shrum at his Pine Bluff clinic to discuss Dr. Shrum's continued business with Bayer and to seek an explanation as to why he was no longer ordering Mirena®. Dr. Shrum informed Mr. Townsend that he continued to prescribe Mirena® to his patients after January, 2008 but that he was now purchasing the non-FDA approved version of the drug from pharmacies in Canada. The non-FDA approved version of Mirena® Dr. Shrum purchased from Canadian pharmacies was less expensive than the version approved by the FDA for sale in the United States. Over a period of at

least eighteen months, Dr. Shrum ordered the non-FDA approved version of Mirena®, prescribed the non-approved version to his patients at Arkansas Center for Women, and inserted the non-FDA approved version into the bodies of his patients. Dr. Shrum submitted claims to the Arkansas Medicaid Program under his clinic's provider number, billing for the non-FDA approved version of Mirena® he inserted into his patients.

9. Arkansas Center for Women, Ltd., of which Kelly Shrum was the sole physician, was registered as a clinic with the Arkansas Medicaid Program operating under provider number136831004 with which Dr. Shrum set out to defraud the state and federal governments. While Dr. Shrum purchased and prescribed the cheaper non-FDA approved version of Mirena®, he billed the Arkansas Medicaid Program using procedure code J7302, as though he had administered the FDA approved, and more expensive, version of the drug, pocketing the difference. Procedure code J7302 is unique, to be used only for the FDA approved version of Mirena®. In so billing the Arkansas Medicaid Program, Kelly Shrum submitted false claims to the United States government in violation of the False Claims Act, 31 U.S.C. § 3729.

10. Mike Townsend became aware of Kelly Shrum's fraudulent activities in January 2008 when he approached Dr. Shrum to discuss why Dr. Shrum had abruptly stopped purchasing Mirena®. Dr. Shrum informed Townsend that he was purchasing the non-FDA approved version of the drug from a pharmacy in Canada, administering the drug to his patients, billing Medicaid and Medicare for the more expensive FDA approved version, and pocketing the difference. Kelly Shrum boasted as he relayed his scheme to Townsend. Townsend had previously been warned of Dr. Shrum's scheme by another Bayer sales representative, Amy Harris, who had already spoken to Dr. Shrum.

Ms. Harris informed Townsend that Dr. Shrum told her that he was purchasing the non-FDA approved version of Mirena® from Canada.

11.   After calling on Dr. Shrum in January 2008, Mike Townsend informed his superior at Bayer—Beth Whisenhunt, District Manager—that Kelly Shrum was ordering the non-FDA approved version of Mirena® from Canada and administering the drug to his patients in Arkansas. Likewise, Amy Harris informed her superior at Bayer—Tommy Gibbs, District Manager.

12.   In April 2009, Mike Townsend called an anonymous Medicaid Fraud Hotline at the Office of the Arkansas Attorney General to report Dr. Shrum's fraudulent billing activities. He provided his telephone number and agreed to cooperate in any investigation but otherwise remained anonymous. Eventually, he was contacted by the Attorney General's Office and asked if he would be willing to speak with an investigator with the FDA. He agreed. Still anonymous, Mr. Townsend again provided the facts of Kelly Shrum's fraud, this time to the FDA's investigator. Mr. Townsend was again asked if he would cooperate in any investigation into Dr. Shrum's activities, to which he again agreed.

13.   In May 2009, Mike Townsend was again contacted via telephone by the Arkansas Attorney General's Office and questioned about Dr. Shurm's fraudulent billing. This time, he was asked to provide his identity but was assured that he would remain anonymous. Mr. Townsend gave the Attorney General's Office his name, birth date, and social security number, and again agreed to cooperate in the investigation. After he provided his identity, Mr. Townsend was immediately contacted by the United States Attorney's Office for the Eastern District of Arkansas. He was informed then that,

because there was an imminent risk of harm to Dr. Shrum's patients, the information he provided to the government, along with his identity, would no longer be kept secret.

14. Based upon the statements of Mike Townsend, the U.S. Attorney's Office obtained a search warrant for Kelly Shrum's Pine Bluff clinic. Agents from the Criminal Investigations Office of the FDA raided the Arkansas Center for Women on June 23, 2009: "During the execution of the warrant, a version of the intrauterine device (IUD) Mirena that has not been approved by the United States Food and Drug Administration for distribution within the United States was found." *See* Press Release, Jane W. Duke, United States Attorney, Eastern District of Arkansas, June 23, 2009.

15. On October 8, 2009, Dr. Kelly Shrum was indicted in the United States District Court for the Eastern District of Arkansas. He was charged with (1) misbranding the non-FDA approved version of Mirena®, (2) health care fraud, (3) and three counts of money laundering. A jury found Dr. Shrum guilty of healthcare fraud for submitting false claims to the Arkansas Medicaid Program on November 17, 2010 following a three week trial.

16. After he was informed that his anonymity would no longer be kept, Mike Townsend informed Beth Whisenhunt, his immediate superior at Bayer, of his cooperation in the investigation of Kelly Shrum. He continued to work for Bayer as per usual throughout the investigation process. But on May 5, 2010, Mr. Townsend was called to a meeting at Bayer's Little Rock office with his new District Manager, Blake Mounce. Mr. Townsend was given no indication as to the subject matter of the May 5th meeting and thought that it was a usual meeting with his boss. When he arrived for the meeting, however, Mr. Townsend learned that Area Director David Beasley and John

O'Donnell from the human resources department of Bayer corporate would also be in attendance. Without a complaint over his job performance, Mike Townsend was fired. As a pretext, he was told by Bayer that he no longer had a job because he did not have a company credit card. Bayer immediately took possession of Mr. Townsend's company issued laptop and his company issued vehicle. After six years of service for the company, Bayer had a taxi waiting for him in the parking lot.

17. Mike Townsend cooperated fully with investigation and prosecution of Kelly Shrum.

## RETALIATION IN VIOLATION OF 31 U.S.C. § 3730(h)

18. Mike Townsend incorporates and re-alleges the allegations contained in paragraphs 1–17 as if fully set forth herein.

19. At the time his employment was terminated, Townsend had been a long-time sales representative in good standing of Bayer.

20. Before he began to cooperate in the federal and state investigation of Dr. Shrum's fraudulent activities, Mike Townsend had received uniformly positive ratings in his performance evaluations.

21. 31 U.S.C. § 3730(h) precludes discharge, demotion, or retaliation against employees who investigate, provide testimony or assistance in any action filed or to be filed under the False Claims Act, 31 U.S.C. § 3730.

22. Defendant Bayer terminated Mike Townsend's employment on May 5, 2010 for his involvement in the investigation and prosecution of Dr. Kelly Shrum's false claims, in violation of 31 U.S.C. § 3730(h).

23. As a direct and proximate result of the retaliation, harassment, threats, and discharge by the Defendants, Mike Townsend has suffered and incurred, and is suffering and incurring, substantial loss of past and future earnings, compensation and other benefits and moneys, as well as harm and damage to his professional reputation and credibility by being wrongfully discharged in violation 31 U.S.C. § 3730(h).

24. Defendants' conduct was malicious, fraudulent, and oppressive and in violation of public policy and 31 U.S.C. § 3730(h).

WHEREFORE, Mike Townsend requests that judgment be entered in his favor against the Defendants Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc. as follows:

    a. That Mike Townsend be awarded any and all relief pursuant to 31 U.S.C. § 3730(h), including, but not limited to, (i) reinstatement with the same seniority status; (ii) two times the amount of back pay; (iii) interest on back pay, and (iv) any and all other compensatory and special damages;

    b. That Mike Townsend be awarded all litigation costs and reasonable attorney's fees;

    c. That Mike Townsend be awarded punitive damages;

    d. That Mike Townsend be granted a trial by jury; and

    e. Any and such further relief that this Court deems appropriate.

RESPECTFULLY SUBMITTED,

Mike Townsend

By: _____
Brian D. Reddick (AR 94057)
**Reddick Law Firm, P.A.**
One Information Way, Suite 201
Little Rock, AR 72202
Telephone:    (501) 907-7790
Facsimile:    (501) 907-7793

and

Charles A. Banks (73004)
**Banks Law Firm, PLLC**
100 Morgan Keegan Drive, Ste. 100
Little Rock, Arkansas 72202
(501) 280-0100 (telephone)
(501) 280-0100 (facsimile)